E-FILED
Monday, 09 July, 2018  04:51:02 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| SARAH MILLER, as guardian and next friend of O.J., a minor, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| PATRICK HARTSHORN, KEVIN MASKEL, NICOLE ROUSE, LAURIE BERNARDI, UNKNOWN VERMILION COUNTY SHERIFF'S DEPARTMENT EMPLOYEES, and the COUNTY OF VERMILION, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |
| | ) | Cause No. 2:18-cv-2050-CSB-EIL |
| PATRICK HARTSHORN, KEVIN MASKEL, NICOLE ROUSE, LAURIE BERNARDI, UNKNOWN VERMILION COUNTY SHERIFF'S DEPARTMENT EMPLOYEES, and the COUNTY OF VERMILION, | ) ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants/Third Party Plaintiffs, | ) ) | |
| v. | ) ) | |
| FARRAH JOHNSON, | ) ) | |
| Third Party Defendant. | ) | |

## DEFENDANT KEVIN MASKEL'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Defendant KEVIN MASKEL, by and through one of his attorneys JOSEPH W. SMITH

of KNIGHT, HOPPE, KURNIK & KNIGHT, LTD., in answer to Plaintiff's Complaint, states:

# Exhibit A

## Introduction

1.      O.J.'s first moments alive were spent in a dirty toilet in a jail cell in Vermilion

County Jail.  Thanks to Defendants' refusals to provide O.J's mother medical care in the days,

hours, and minutes before she gave birth to O.J., the only person to help with O.J.'s birth was his

mother's cellmate, who had no medical training whatsoever.

**ANSWER:      Defendant Kevin Maskel lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegation that O.J.'s first moments alive were spent in a dirty toilet in a jail cell in Vermilion County Jail.  Defendant Kevin Maskel denies each and every otherallegation contained in Paragraph 1 of Plaintiff's Complaint.**

2.      Even after O.J. was born, Defendants failed to provide him with adequate medical

care, instead unreasonably delaying a call for emergency medical care.  Defendants' misconduct

caused O.J. serious injuries, which he suffers to this day.

**ANSWER:      Defendant Kevin Maskel denies each and every allegation contained in Paragraph 2 of Plaintiff's Complaint.**

## Jurisdiction and Venue

3.      This Court has jurisdiction of this action under 28 U.S.C. §§ 1331 and 1367.

**ANSWER:      Defendant Kevin Maskel admits Paragraph 3 of Plaintiff's Complaint.**

4.      Venue is proper under 28 U.S.C. § 1391(b).  On information and belief, one or

more Defendants reside in this judicial district.  Further, a substantial part of the events or

omissions giving rise to these claims occurred in this district.

**ANSWER:      Defendant Kevin Maskel denies that any omissions occurred or that Plaintiff has any claims, but admits the remaining allegations contained in Paragraph 4 of Plaintiff's Complaint.**

## Parties

5.      Plaintiff Sarah Miller is a resident of Danville, Illinois.

**ANSWER:**   **Defendant Kevin Maskel lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 5 of Plaintiff's Complaint**

6.      O.J., the legal minor on whose behalf Plaintiff brings this action, is also a resident of Danville, Illinois.  O.J. lives with Plaintiff Sarah Miller, his biological grandmother.  He is currently three years old.

**ANSWER:**   **Defendant Kevin Maskel lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 6 of Plaintiff's Complaint.**

7.      Defendant Patrick Hartshorn is the Sheriff of Vermilion County.  He is sued here in his official capacity as Sheriff of Vermilion County.  At all times relevant to the events at issue in this case, Defendant Hartshorn was acting under color of law.  As Sheriff, Defendant Hartshorn is in charge of the Vermilion County Jail and has policymaking authority over the jail for the actions at issue in this case.  At all times relevant to the events at issue in this case, Defendant Hartshorn was responsible for promulgating rules, regulations, policies, and procedures as Sheriff of Vermilion County for the provision of medical care by medical personnel and correctional staff.

**ANSWER:**   **Defendant Kevin Maskel acknowledges that Sheriff Hartshorn is sued here in his official capacity as Sheriff of Vermilion County.  Defendant Kevin Maskel lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 7 of Plaintiff's Complaint.**

8.      At all times relevant to the events at issue in the case, Defendant Kevin Maskel was a sergeant at the Vermilion County Jail and an employee of the Vermilion County Sheriff's Department.  Defendant Maskel is sued here in his individual capacity.  At all times relevant to the events at issue in the case, Defendant Maskel was acting under color of law and within the scope of his employment.

**ANSWER:** **Defendant Kevin Maskel acknowledges that he sued here in his individual capacity.  Defendant Kevin Maskel admits the remaining allegations contained in Paragraph 8 of Plaintiff's Complaint.**

9.      At all times relevant to the events at issue in this case, Defendant Nicole Rouse was a correctional officer at Vermilion County Jail and an employee of the Vermilion County Sheriff's Department.  Defendant Rouse is sued here in her individual capacity.  At all times relevant to the events at issue in this case, Defendant Rouse was acting under color of law and within the scope of her employment.

**ANSWER:** **Defendant Kevin Maskel acknowledges that Defendant Nicole Rouse is sued here in her individual capacity.  Defendant Kevin Maskel admits the remaining allegations contained in Paragraph 9 of Plaintiff's Complaint.**

10.     At all times relevant to the events at issue in this case, Defendant Laurie Bernardi was a correctional officer at Vermilion County Jail and an employee of the Vermilion County Sheriff's Department.  Defendant Bernardi is sued here in her individual capacity.  At all times relevant to the events at issue in this case, Defendant Bernardi was acting under color of law and within the scope of her employment.

**ANSWER:** **Defendant Kevin Maskel acknowledges that Defendant Laurie Bernardi is sued here in her individual capacity.  Defendant Kevin Maskel admits the remaining allegations contained in Paragraph 10 of Plaintiff's Complaint.**

### Facts

11.     On April 2, 2014, Farrah Johnson, O.J.'s biological mother, was brought to the Vermilion County Jail following her arrest in Danville, Illinois.  She was approximately 40 weeks pregnant.  At the time that she was booked into the jail, Ms. Johnson's due date, March 29, 2014, had already passed.

**ANSWER:** **Defendant Kevin Maskel admits only that Farrah Johnson was an inmate at the Vermilion County Jail on April 6, 2014, and that she was pregnant. Defendant Kevin Maskel lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 11 of Plaintiff's Complaint.**

12.     Ms. Johnson told jail staff about her pregnancy and imminent labor during her

booking and again in a grievance submitted to jail staff that same day.  Ms. Johnson had

previously been detained at the jail in December 2013 and January through February 2014,

during which time she requested a pregnancy checkup and was prescribed daily prenatal

vitamins.

**ANSWER:     Defendant Kevin Maskel lacks sufficient knowledge or information to form a
belief as to the truth or falsity of the allegations contained in Paragraph 12 of
Plaintiff's Complaint.**

13.     After being booked into custody at the jail on April 2, 2014, Ms. Johnson was

assigned to a jail cell in the women's dorm.  The cell was dirty, including a filthy toilet and floor.

**ANSWER:     Defendant Kevin Maskel admits only that, on April 6, 2014, Farrah Johnson
had been assigned to a cell in the women's dorm.  Defendant Kevin Maskel
lacks sufficient knowledge or information to form a belief as to the truth or
falsity of the remaining allegations contained in Paragraph 13 of Plaintiff's
Complaint.**

14.     On April 3, 2014, Ms. Johnson was prescribed a pregnancy diet, milk to be drunk

with meals, and a bedtime snack.  No other medical attention, including a prenatal exam, was

provided.

**ANSWER:     Defendant Maskel lacks sufficient knowledge or information to form a belief
as to the truth or falsity of the allegations contained in Paragraph 14 of
Plaintiff's Complaint.**

15.     Ms. Johnson told correctional staff that she had an obstetrician-gynecologist who

was treating her, and asked to be seen by the doctor.  Staff told Ms. Johnson that she would be

taken to be seen after the jail verified that provider.

**ANSWER:     Defendant Maskel lacks sufficient knowledge or information to form a belief
as to the truth or falsity of the allegations contained in Paragraph 15 of
Plaintiff's Complaint.**

16.     In the late evening hours of April 5, 2014, Ms. Johnson began to feel contractions.

She told correctional officers, including Defendant Bernardi, that she was in labor, was suffering

vaginal bleeding, and was in severe pain.  Ms. Johnson asked to see the nurse, but was told that

the nurse was no longer at the jail.  In response to Ms. Johnson's complaints, Defendants made

no efforts to provide Ms. Johnson with medical attention.

**ANSWER:     Defendant Kevin Maskel denies each and every allegation contained in
Paragraph 16 of Plaintiff's Complaint.**

17.     As the pain increased, Ms. Johnson became very concerned and again reported to

Defendants that she was in labor and that it was getting worse.  Defendant Maskel told

Defendant Bernardi that Ms. Johnson "was not going anywhere at that time" and said that Ms.

Johnson would not receive any medical attention until her water broke or the baby began to

crown.  Defendant Bernardi informed Defendant Maskel that she "had no idea how to tell if

[Ms.] Johnson was crowning[.]"  Defendant Maskel told Defendant Bernardi that Ms. Johnson

would know.  At no point during these exchanges did any Defendant arrange for Ms. Johnson to

receive medical attention.

**ANSWER:     Defendant Kevin Maskel lacks sufficient knowledge or information to form a
belief as to the truth or falsity of the allegation that as the pain increased
Plaintiff became very concerned.  Defendant Kevin Maskel denies each and
every other allegation contained in Paragraph 17 of Plaintiff's Complaint.**

18.     When Ms. Johnson reported that she was "leaking" fluid from her vagina, or

words to that effect, Defendant Maskel told Defendant Bernardi to give Ms. Johnson a feminine

pad so she could "prove" that she was "leaking."

**ANSWER:     Defendant Kevin Maskel admits that he told Defendant Laurie Bernardi to
give Farrah Johnson a female pad, but denies that he did so in order to
require Farrah Johnson to "prove" that she was "leaking."  Defendant Kevin
Maskel lacks sufficient knowledge or information to form a belief as to the
truth or falsity of the remaining allegations contained in Paragraph 18 of
Plaintiff's Complaint.**

19.     As Ms. Johnson's contractions started to worsen, her cellmate, Shavala Howard,

called out to Defendants for help.  At the time, Ms. Johnson was lying on the filthy floor in her

cell, crying out in pain.  Defendants still made no efforts to provide Ms. Johnson with medical

attention.

**ANSWER:**   **Defendant Kevin Maskel denies that Defendants made no efforts to provide Farrah Johnson with medical attention.  Defendant Kevin Maskel lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 19 of Plaintiff's Complaint.**

20.    On information and belief, Defendant Bernardi asked Defendant Rouse to come to

Ms. Johnson's dorm, which she did.  Defendant Rouse, like the other Defendants, made no

efforts to provide Ms. Johnson with medical attention.

**ANSWER:**   **Defendant Kevin Maskel admits that, at some point, Defendant Laruie Bernardi asked Defendant Nicole Rouse to come to Farrah Johnson's dorm, which she did.  Defendant Kevin Maskel denies each and every other allegation contained in Paragraph 20 of Plaintiff's Complaint.**

21.    Ms. Johnson eventually began to feel significant pressure in her lower abdomen

and sat down on the toilet, the only place where she could find some respite from the pain and

pressure.

**ANSWER:**   **Defendant Kevin Maskel admits only that, at some point, Farrah Johnson sat down on the toilet.  Defendant Kevin Maskel lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 21 of Plaintiff's Complaint.**

22.    Defendant Bernardi saw Ms. Johnson sitting on the toilet and observed that she

was in distress.  Despite that fact, Defendants still made no efforts to provide Ms. Johnson with

medical attention.

**ANSWER:**   **Defendant Kevin Maskel denies that Defendants made no effort to provide Farrah Johnson with medical attention.  Defendant Kevin Maskel lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 22 of Plaintiff's Complaint.**

23.    A few minutes after that, O.J. emerged from Ms. Johnson's birth canal and

dropped into the toilet.  He landed with his head facing down, but as the rest of his body dropped

into the toilet, his head slid up the inside of the toilet bowl.  At the time of O.J.'s birth, the toilet

was filthy and partially filled with water.

**ANSWER:**       **Defendant Kevin Maskel lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 23 of Plaintiff's Complaint.**

24.       At the time that O.J. was born, Defendants still had made no efforts to provide

Ms. Johnson with medical attention.

**ANSWER:**       **Defendant Kevin Maskel denies each and every allegation contained in Paragraph 24 of Plaintiff's Complaint.**

25.       At some point, Defendant Maskel at last called for an ambulance to take Ms.

Johnson and O.J. to the hospital for medical attention.  Incapacitated from the physical trauma of

childbirth, Ms. Johnson stayed on the toilet, still attached to O.J. by the umbilical cord, until the

paramedics arrived.  O.J. remained in a ball in the toilet water for several minutes.

**ANSWER:**       **Defendant Kevin Maskel admits that, at some point, he called for an ambulance to take Farrah Johnson and her baby to the hospital.  Defendant Kevin Maskel admits that, when paramedics arrived at Farrah Johnson's cell, Farrah Johnson was seated on the toilet.  Defendant Kevin Maskel lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 25 of Plaintiff's Complaint.**

26.       Paramedics eventually arrived and entered Ms. Johnson's cell.  They removed

O.J. from the toilet, wrapped him in paper towels, and placed him on a table.  He was alone on

the table and cold, but was not crying because his mouth was full of mucus.

**ANSWER:**       **Defendant Kevin Maskel admits that, at some point, paramedics arrived and entered Farrah Johnson's cell, that the paramedics wrapped Farrah Johnson's baby and placed the baby on the table, and that the baby was not crying while it was on the table.  Defendant Kevin Maskel denies that the paramedics removed Farrah Johnson's baby from the toilet, that the paramedics wrapped Farrah Johnson's baby in paper towels, and that Farrah Johnson's baby was left alone on the table.  Defendant Kevin Maskel lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 26 of Plaintiff's Complaint.**

27.     O.J. did not get any of the medical care newborns should receive, including cutting the umbilical cord, suctioning the fluid from his mouth and lungs, cleaning his eyes, getting warmth, or having physical contact with his mother until he was transported to the hospital well after he was born.

**ANSWER:     Defendant Kevin Maskel denies each and every allegation contained in Paragraph 27 of Plaintiff's Complaint.**

28.     O.J. and his mother were eventually taken to the hospital in an ambulance, still connected by the umbilical cord.  While in the ambulance, Ms. Johnson was handcuffed to the stretcher and could not hold O.J.  Defendant Rouse rode with them in the ambulance.

**ANSWER:     Defendant Kevin Maskel admits that, at some point, Farrah Johnson and her baby were taken to the hospital in an ambulance and that Defendant Nicole Rouse rode with them in the ambulance.  Defendant Kevin Maskel denies that Farrah Johnson and her baby were still connected by the umbilical cord when they were taken to the hospital.  Defendant Kevin Maskel lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 28 of Plaintiff's Complaint.**

29.     O.J. was immediately taken from Ms. Johnson when they arrived at the hospital. He was given medical attention and required the use of a respirator.  O.J. was sent home on the respirator, which he uses periodically to this day.

**ANSWER:     Defendant Kevin Maskel lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 29 of Plaintiff's Complaint.**

30.     O.J. suffered developmental delays and was slow to hit his early childhood developmental milestones, including talking and walking.

**ANSWER:     Defendant Kevin Maskel lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 30 of Plaintiff's Complaint.**

**Count I – 42 U.S.C. § 1983**
**Denial of Medical Care (Fourth Amendment)**
**(Against Defendants Hartshorn, Maskel, Rouse, Bernardi)**

31.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:     Defendant Kevin Maskel incorporates his answers to each paragraph of Plaintiff's Complaint as if fully set out herein.**

32.     As described more fully above, Ms. Johnson and O.J. both had serious medical needs.  Defendants were aware of Ms. Johnson's and O.J.'s medical needs and the seriousness of those needs.

**ANSWER:     Defendant Kevin Maskel denies each and every allegation contained in Paragraph 32 of Plaintiff's Complaint.**

33.     Despite that knowledge, Defendants failed to provide O.J. adequate medical attention.

**ANSWER:     Defendant Kevin Maskel denies each and every allegation contained in Paragraph 33 of Plaintiff's Complaint.**

34.     The misconduct described in this Count was objectively unreasonable. Alternatively, the misconduct was undertaken intentionally, with malice, and/or with reckless indifference to O.J.'s safety and health.

**ANSWER:     Defendant Kevin Maskel denies each and every allegation contained in Paragraph 34 of Plaintiff's Complaint.**

35.     As a result of Defendants' unjustified and unconstitutional conduct, O.J.'s constitutional rights were violated and he suffered physical, emotional, and psychological injuries, which continue to this day.

**ANSWER:     Defendant Kevin Maskel denies each and every allegation contained in Paragraph 35 of Plaintiff's Complaint.**

36.     O.J.'s injuries were caused by the policies, practices, and customs of Defendant Hartshorn.

**ANSWER:**   **Defendant Kevin Maskel denies each and every allegation contained in Paragraph 36 of Plaintiff's Complaint.**

37.    At all times relevant to the events at issue in this case, Defendant Hartshorn was responsible for ensuring that individuals housed at the Vermilion County Jail received constitutionally adequate medical care, and was equally responsible for the creation, implementation, oversight, and supervision of policies, practices, and customs regarding the provision of medical care to persons in the custody of the Vermilion County Sheriff's Department.

**ANSWER:**   **Defendant Kevin Maskel lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 37 of Plaintiff's Complaint.**

38.    At all times relevant to the events described in this Complaint and for a period of time beforehand, one or more policymakers at the Vermilion County Sheriff's Department had notice of a widespread practice and custom by correctional and medical staff at the Vermilion County Jail to deny appropriate medical care to individuals with serious medical needs. For example, one or more policymakers were made aware of the misconduct which led to the following lawsuits:

> a.   *Jones v. Hartshorn*, No. 15-CV-2032, 2017 WL 3140360, at *4 (C.D. Ill. July 24, 2017) (summary judgment is denied to Defendant Vermilion County jail guard on Plaintiff's claims arising from Plaintiff's dermatitis, tooth decay, and alleged rectal bleeding during his 2013 detention in the Vermilion County Jail).

> b.   *Jones v. Vermilion Cty. Jail*, No. 15-CV-2032, 2015 WL 9217110, at *1 (C.D. Ill. Dec. 17, 2015) (allowing detainee's claims of inadequate medical care to proceed when detainee was not given treatment for serious medical conditions like diabetes, heart disease, dermatitis, rectal bleeding, and tooth decay).

c.  *Cox v. Hartshorn*, 503 F. Supp. 2d 1078 (C.D. Ill. 2007) (alleging that jail officials refused to provide him adequate medical care).

d.  *Catron v. Vermilion County Jail*, No. 2:13-cv-02271-HAB (filed Dec. 10, 2013) (alleging jail officials refused to fill his prescription for pain killers to address his chronic pain based on Hartshorn's policy).

e.  *Hayes v. Hartshorn* [*sic*], No. 05-2282, 2009 WL 722579 (C.D. Ill. Mar. 17, 2009) (alleging that that Nurse Galloway and Defendant Hartshorn failed to provide adequate medical care).

f.  *Smith v. Hartshorn*, No. 09-2142, 2009 WL 2195909 (C.D. Ill. July 14, 2009) (alleging that jail medical staff and Defendant Hartshorn failed to provide prompt treatment after plaintiff cut his elbow).

g.  *Williams v. Lewellyn*, No. 15-CV-2254, 2015 WL 6689643 (C.D. Ill. Nov. 2, 2015) (alleging that jail personnel failed to provide medical treatment after jail guards injured his arm).

h.  *Dorris v. Hartshorn*, No. 08-CV-2041, 2009 WL 2431310 (C.D. Ill. Aug. 6, 2009) (alleging that jail staff unconstitutionally denied him medical care).

**ANSWER:** **Defendant Kevin Maskel denies each and every allegation contained in Paragraph 38 of Plaintiff's Complaint, including sub-paragraphs a through h thereof.**

39.  The above widespread practices and customs, so well settled as to constitute *de facto* policies of the County of Vermilion, were able to exist and thrive, individually and/or together, because one or more policymakers at the Vermilion County Sheriff's Department, with authority over those policies, practices, and customs, exhibited deliberate indifference to the problem, thereby effectively ratifying it.

**ANSWER:**    **Defendant Kevin Maskel denies each and every allegation contained in Paragraph 39 of Plaintiff's Complaint.**

40.    Additionally, at all times relevant to the events described in this Complaint and for a period of time before and after, Defendant Hartshorn, in his official capacity, failed to promulgate proper or adequate policies, practices, customs, or procedures to ensure that adequate medical care was provided to individuals at the Vermilion County Jail.

**ANSWER:**    **Defendant Kevin Maskel denies each and every allegation contained in Paragraph 40 of Plaintiff's Complaint.**

41.    The misconduct described in this County [*sic*] was undertaken pursuant to the policies and practices of the County of Vermilion in that the constitutional violations committed against O.J. were committed with the knowledge and approval of persons with final policymaking authority for Vermilion County, or were actually committed by persons with such final policymaking authority.

**ANSWER:**    **Defendant Kevin Maskel denies each and every allegation contained in Paragraph 41 of Plaintiff's Complaint.**

42.    O.J.'s injuries were caused by officers, agents, and employees of the Vermilion County Sheriff's Department, including but not limited to the individually named Defendants, who acted pursuant to one or more of the policies, practices, and customs set forth above in engaging in the misconduct described in this Count.

**ANSWER:**    **Defendant Kevin Maskel denies each and every allegation contained in Paragraph 42 of Plaintiff's Complaint.**

**Count II – 42 U.S.C. § 1983**
**Due Process (Fourteenth Amendment)**
**(Defendants Hartshorn, Maskel, Rouse, and Bernardi)**

43.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:**    **Defendant Kevin Maskel incorporates his answers to each paragraph of Plaintiff's Complaint as if fully set out herein.**

- 13 -

44.     In the manner described more fully above, Defendants violated O.J.'s constitutional rights.

**ANSWER:     Defendant Kevin Maskel denies each and every allegation contained in Paragraph 44 of Plaintiff's Complaint.**

45.     By refusing to release Ms. Johnson, transfer her to a hospital for medical evaluation and treatment, or otherwise arrange for Ms. Johnson to receive medical treatment during her childbirth, Defendants caused and/or increased the danger to O.J.'s health and safety. In addition, Defendants failed to promptly and properly protect O.J. after they became aware of his birth.

**ANSWER:     Defendant Kevin Maskel denies each and every allegation contained in Paragraph 45 of Plaintiff's Complaint.**

46.     Defendants' actions were undertaken willfully, wantonly, and with reckless indifference or conscious disregard for the safety of others.

**ANSWER:     Defendant Kevin Maskel denies each and every allegation contained in Paragraph 46 of Plaintiff's Complaint.**

47.     Defendants' failure to protect O.J. "shocks the conscience" in that Defendants knew of the serious threat that O.J. faced a result of the Defendants' misconduct.

**ANSWER:     Defendant Kevin Maskel denies each and every allegation contained in Paragraph 47 of Plaintiff's Complaint.**

48.     As a result of Defendants' unjustified and unconstitutional conduct, O.J.'s constitutional rights were violated and he suffered physical, emotional, and psychological injuries, which continue to this day.

**ANSWER:     Defendant Kevin Maskel denies each and every allegation contained in Paragraph 48 of Plaintiff's Complaint.**

**Count III – 42 U.S.C. § 1983**
**Failure to Intervene (Fourth & Fourteenth Amendments)**
**(Defendants Maskel, Rouse, and Bernardi)**

49.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:     Defendant Kevin Maskel incorporates his answers to each paragraph of**
**Plaintiff's Complaint as if fully set out herein.**

50.     As described more fully above, Defendants had a reasonable opportunity to prevent the violation of O.J.'s constitutional rights as set forth above had they been so inclined, but failed to do so.

**ANSWER:     Defendant Kevin Maskel denies each and every allegation contained in**
**Paragraph 50 of Plaintiff's Complaint.**

51.     In fact, written policies at the Vermilion County Jail required Defendants to notify a supervisor and call an ambulance in the event of a medical emergency.

**ANSWER:     Defendant Kevin Maskel admits only that the written policy at the jail**
**provided that a correctional officer will notify the shift supervisor of an**
**emergency and will call for an ambulance if necessary.  Defendant Kevin**
**Maskel denies each and every other allegation contained in Paragraph 51 of**
**Plaintiff's Complaint.**

52.     Defendants' failures to act were objectively unreasonable.  Alternatively and/or additionally, Defendants' failures to act were intentional, done with malice, and/or done with reckless indifference to O.J.'s rights.

**ANSWER:     Defendant Kevin Maskel denies each and every allegation contained in**
**Paragraph 52 of Plaintiff's Complaint.**

53.     As a result of Defendants' unjustified and unconstitutional conduct, O.J.'s constitutional rights were violated and he suffered physical, emotional, and psychological injuries, which continue to this day.

**ANSWER:     Defendant Kevin Maskel denies each and every allegation contained in**
**Paragraph 53 of Plaintiff's Complaint.**

## Count IV – 42 U.S.C. § 1983
## Conspiracy (Fourth & Fourteenth Amendments)
### (Defendants Maskel, Rouse, and Bernardi)

54.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:    Defendant Kevin Maskel incorporates his answers to each paragraph of Plaintiff's Complaint as if fully set out herein.**

55.    Defendants reached an agreement among themselves to deprive O.J. of his constitutional rights and to protect one another from liability for depriving O.J. of his rights, all as described in the various paragraphs of this Complaint.

**ANSWER:    Defendant Kevin Maskel denies each and every allegation contained in Paragraph 55 of Plaintiff's Complaint.**

56.    In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

**ANSWER:    Defendant Kevin Maskel denies each and every allegation contained in Paragraph 56 of Plaintiff's Complaint.**

57.    The misconduct described in this Count was undertaken intentionally, with malice, and/or with reckless indifference to O.J.'s rights.

**ANSWER:    Defendant Kevin Maskel denies each and every allegation contained in Paragraph 57 of Plaintiff's Complaint.**

58.    As a result of Defendants' unjustified and unconstitutional conduct, O.J.'s constitutional rights were violated and he suffered physical, emotional, and psychological injuries, which continue to this day.

**ANSWER:    Defendant Kevin Maskel denies each and every allegation contained in Paragraph 58 of Plaintiff's Complaint.**

## Count V – State Law Claim
## Negligence or Willful and Wanton Conduct
### (Defendants Maskel, Rouse, and Bernardi)

59.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

- 16 -

**ANSWER:    Defendant Kevin Maskel incorporates his answers to each paragraph of Plaintiff's Complaint as if fully set out herein.**

60.    Defendants knew Ms. Johnson was pregnant and knew that O.J.'s birth was imminent.  In the manner described more fully above, the Defendants' actions breached the duty of care that they owed to Ms. Johnson (as O.J.'s mother) and O.J. himself.

**ANSWER:    Defendant Kevin Maskel admits only that he learned that Farrah Johnson was pregnant on April 6, 2014.  Defendant Kevin Maskel denies each and every other allegation contained in Paragraph 60 of Plaintiff's Complaint.**

61.    Alternatively, the actions of Defendants were willful and wanton in that they demonstrated an utter indifference to the safety of others.  Defendants were aware that a serious risk to O.J.'s health and safety would likely result from the above-described course of action and reckless [*sic*] disregarded the consequences of those actions.

**ANSWER:    Defendant Kevin Maskel denies each and every allegation contained in Paragraph 61 of Plaintiff's Complaint.**

62.    As a direct and proximate result of Defendants' actions, O.J. suffered severe pain, anguish, suffering, and emotional distress, and continues to suffer other grievous and continuing injuries and damages as set forth above.

**ANSWER:    Defendant Kevin Maskel denies each and every allegation contained in Paragraph 62 of Plaintiff's Complaint.**

**Count VI – State Law Claim**
**Respondeat Supreior**
**(Defendant Hartshorn)**

63.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:    Defendant Kevin Maskel incorporates his answers to each paragraph of Plaintiff's Complaint as if fully set out herein.**

64.    In committing the acts alleged in the preceding paragraphs, Defendants Maskel, Bernardi, and Rouse were employees, members, and agents of the Vermilion County Sheriff's Department, acting at all relevant times within the scope of their employment.

**ANSWER:** **Defendant Kevin Maskel admits only that he, Defendant Laurie Bernardi, and Defendant Nicole Rouse were employees of the Vermilion County Sheriff's Department and were acting within the scope of their employment at all times relevant to this incident.  Defendant Kevin Maskel denies each and every other allegation contained in Paragraph 64 of Plaintiff's Complaint.**

65.    Consequently, Defendant Hartshorn, in his official capacity as Sheriff of Vermilion County, is liable for the actions of its employees acting within the scope of their employment under state law.

**ANSWER:** **Defendant Kevin Maskel denies each and every allegation contained in Paragraph 65 of Plaintiff's Complaint.**

**Count VI [*sic*] – State Law Claim**
**Indemnification**
**(Defendant Vermilion County)**

66.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:** **Defendant Kevin Maskel incorporates his answers to each paragraph of Plaintiff's Complaint as if fully set out herein.**

67.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

**ANSWER:** **Defendant Kevin Maskel admits Paragraph 67 of Plaintiff's Complaint.**

68.    At all times relevant to the events at issue in this case, each of the other Defendants were employees of the Vermilion County Sheriff's Department and were acting within the scope of their employment in committing the misconduct described above.

**ANSWER:** **Defendant Kevin Maskel admits only that he, Defendant Laurie Bernardi, and Defendant Nicole Rouse were employees of the Vermilion County Sheriff's Department and were acting within the scope of their employment at all times relevant to this incident.  Defendant Kevin Maskel denies each and every other allegation contained in Paragraph 68 of Plaintiff's Complaint.**

Wherefore, Plaintiff Sarah Miller, as guardian and next friend of O.J., a minor, respectfully requests that this Court enter a judgment in her favor and against Defendants Patrick Hartshorn, Kevin Maskel, Nicole Rouse, Laurie Bernardi, Unknown Vermillion County Sheriff's Department Employees, and the County of Vermillion, awarding compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and appropriate.

**ANSWER:** **WHEREFORE, having fully answered, Defendant Kevin Maskel denies that Plaintiff is entitled to any recovery whatsoever.**

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all issues so triable.

**ANSWER:** **Defendant Kevin Maskel acknowledges that Plaintiff demands a trial by jury on all issues so triable.**

## DEFENDANT KEVIN MASKEL'S JURY DEMAND

Defendant Kevin Maskel hereby demands a trial by jury on all issues so triable.

## DEFENDANT KEVIN MASKEL'S AFFIRMATIVE DEFENSES

By way of further answer, Defendant Kevin Maskel asserts the following affirmative defenses:

1.      Defendant Kevin Maskel is entitled to qualified immunity, in that (1) he did not violate O.J.'s constitutional rights and (2) O.J.'s constitutional rights were not clearly established on April 6, 2014.

2.      Defendant Kevin Maskel is entitled to immunity under Section 2-204 of the Illinois Tort Immunity Act ("TIA"), which provides that a public employee acting within the

scope of his employment "is not liable for an injury caused by the act or omission of another person."  745 ILCS 10/2-204.

3.      Defendant Kevin Maskel is entitled to immunity under Section 4-103 of the TIA, which provides that a public employee may not be liable for failure to provide sufficient equipment, personnel, supervision, or facilities in a jail, detention facility, or correctional facility. 745 ILCS 10/4-103.

4.      Defendant Kevin Maskel is entitled to immunity under Section 4-105 of the TIA, which provides that a public employee may not be liable "for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody," because Defendant Kevin Maskel did not observe conditions indicating that Farrah Johnson was in need of immediate medical care and because he did not, through willful and wanton conduct, fail to take reasonable action to summon medical care.  745 ILCS 10/4-105.

5.      Defendant Kevin Maskel is entitled to immunity under Section 6-105 of the TIA, which provides that public employee may not be liable for "injury caused by the failure to make a mental or physical examination, or to make an adequate physical or mental examination of any person for the purpose of determining whether such person has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself or others."  745 ILCS 10/6-105.

6.      Defendant Kevin Maskel is entitled to immunity under Section 6-106(a) of the TIA, which provides that a public employee may not be liable "for injury resulting from diagnosing or failing to diagnose that a person is afflicted with mental or physical illness. . . ." 745 ILCS 10/6-106(a).

7.      Defendant Kevin Maskel is entitled to immunity under Section 6-109 of the TIA, which provides that a public employee may not be liable "for an injury resulting from the failure to admit a person to a medical facility operated or maintained by a local public entity."  745 IlCS 10/6-109.

8.      Defendant Kevin Maskel is entitled to immunity under Section 2-201 of the TIA, which provides that a public employee serving in a position involving the determination of policy or the exercise of discretion may not be liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.  745 ILCS 10/2-201.

Respectfully submitted,

/s/ Joseph W. Smith
Joseph W. Smith
Elizabeth A. Knight
Byron D. Knight
Jenna K. Throw
Attorney for DEFENDANT KEVIN MASKEL
Knight, Hoppe, Kurnik & Knight, Ltd.
833 West Lincoln Highway, Suite 340E
Schererville, IN  46375
Tel:  219/322-0830
Fax:  219/322-0834
Email:  JSmith@khkklaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of July 2018, I caused the foregoing pleading to be filed

using the Court's CM/ECF system, which effected service on all counsel of record:

- Sarah C. Grady, sarah@loevy.com
- Rachel Elaine Brady, brady@loevy.com
- Michael W. Condon, mcondon@hcbattorneys.com
- Jason W. Rose, jrose@hcbattorneys.com
- Elizabeth A. Knight, eknight@khkklaw.com, kmeyer@khkklaw.com
- Byron D. Knight, bknight@khkklaw.com, kmeyer@khkklaw.com
- Jenna K. Throw, jthrow@khkklaw.com, dbotma@khkklaw.com
- Joseph W. Smith, jsmith@khkklaw.com, dbotma@khkklaw.com

/s/ Joseph W. Smith